1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

** E-filed on 6/21/05 **

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DOMINANT SEMICONDUCTORS SDN. BHD., | Case Number C 04-3319 JF |
| Plaintiff, | |
| | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| OSRAM GMBH, et al., | [Docket No. 40] |
| Defendants. | |

Defendants OSRAM GmbH, OSRAM Opto Semiconductors GmbH, OSRAM Opto Semiconductors, Inc., and OSRAM Sylvania, Inc. (collectively "OSRAM") move for summary judgment on all claims asserted by Plaintiff Dominant Semiconductors Sdn. Bhd. ("Dominant"). Dominant opposes the motion. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on June 17, 2005. For the reasons set forth below, the motion will be granted.

**I. BACKGROUND**

OSRAM and Dominant are competitors in the market for light-emitting diodes ("LEDs"), which are small semiconductor devices that emit light. OSRAM, a subsidiary of Siemens, owns a number of patents relating to LED technology. Dominant was founded in 2000 and currently is

1  managed by Tay Kheng Chiong, a former OSRAM production director.  Dominant alleges that

2  OSRAM has engaged in a history of harassing behavior, including threats of legal action if

3  Dominant infringed any of OSRAM's patents and the hiring of private investigators to monitor

4  activity at Dominant's production facilities.[1]

5       In September 2003, OSRAM distributed a letter written by its outside patent counsel,

6  Epping Hermann Fisher, which expressed the following opinion ("Opinion Letter"):

7       It is our opinion that according to the present information all DOMINANT LED
        products except colored SpiceLEDs make unauthorized use of at least one most of
8       them of at least two or more of [sic] OSRAM's patent families directed to LED
        housings and white light emitting LEDs.  All white light emitting LEDs of
9       Dominant make use of at least three, most of them of even four [sic] respective
        OSRAM patent families.  In our opinion it can be assumed, that with the help of
10      the respective patents listed in the enclosed table in the most important countries
        the import, use and sale of most DOMINANT LED products can be stopped.

11
        Finally we want to emphasize that we do not mean to imply by silence herein that
12      there are not other OSRAM patents which are infringed by LED products
        manufactured and offered by DOMINANT.
13

14  Sanders Decl., Ex. 1.  This conclusion was accompanied by, among other things, a two-page

15  table listing (1) the types of Dominant products thought to infringe OSRAM's patents, (2) certain

16  characteristics of those products based on Dominant's "Catalogue Summary dated March 2003,"

17  (3) the OSRAM patents believed to be infringed by each product type, and (4) brief

18  "[o]bservations" of how each product type infringed the subject patents.  *See id.*  In addition,

19  addressing patents separate from OSRAM's LED-related patents, the Opinion Letter stated,

20  "OSRAM's chip technology patents have not been considered, yet.  It can be assumed that

21  DOMINANT's products make use of OSRAM's chip technology patents."  *Id.*  OSRAM sent the

22  Opinion Letter to its "Colleagues, Sales and Distribution Partners" along with a cover e-mail

23  message explaining that the recipients were receiving the "official statement of the OSRAM's

24  patent counsel concerning 'DOMINANT' products."  *Id.*  OSRAM invited the recipients of the

25

26  _____

27       [1] Dominant also alleges that Infineon, another Siemens subsidiary, has threatened
    companies that do business with Dominant.  Infineon is not a party to this lawsuit, nor does
28  Dominant allege a basis upon which the actions of Infineon would be attributable to OSRAM.

2

1   message to use the Opinion Letter and an additional statement provided by OSRAM[2] "to explain

2   the legal situation to Your customer."  *Id.*

3          In May 2004, OSRAM filed a complaint before the United States International Trade

4   Commission ("ITC") alleging infringement of nine OSRAM patents by various Dominant LED

5   products.[3]  *See* Sanders Decl., Ex. 4.  The ITC began its investigation of OSRAM's claims in

6   June 2004.  On June 8, 2004, OSRAM issued a press release announcing the filing of its ITC

7   complaint against Dominant and providing details about its allegations of patent infringement

8   and the relief sought.  *See* Sanders Decl., Ex. 1.  Then, on July 19, 2004, OSRAM issued a press

9   release announcing that it had received an American distributor's declaration that it would not

10  "import or market any LEDs that infringe on OSRAM's patent rights."  *Id.*  OSRAM noted that

11  "[t]his declaration relates in particular to products supplied by the manufacturer Dominant

12  Semiconductors . . . against whom OSRAM . . . has filed a lawsuit with the ITC . . . for

13  infringement of patents."  *Id.*  OSRAM subsequently amended its ITC complaint by alleging

14  infringement of a tenth patent by Dominant's super-small LEDs and dropping claims of

15  infringement by Dominant's bi-color LEDs.  *See* Sanders Decl., Ex. 7.  Dominant agreed not to

16  oppose the amendment provided that it would have to answer only the amended complaint and

17  not the original complaint.  *See* Sanders Decl., Ex. 6.  In its answer to the amended ITC

18

19  [2] OSRAM suggested that its "Colleagues, Sales and Distribution Partners" could transmit
20  the following statement, in pertinent part, to their own customers:

21  Dear Customer
    attached You'll find the official statement of the OSRAM's patent counsel
22  concerning potential infringement of several OSRAM patents with
    "DOMINANT" products.  We therefore have the possibility (if necessary with the
23  rulings of legal authorities)to [sic] stop the import, sale and use of the related
    "DOMINANT" products in the most important countries.  In consequencies [sic]
24  the final endproduct [sic] of your customers must be withdrawn from market.

25
26  *Id.*

27  [3] The ITC complaint alleges that six OSRAM patents are infringed by Dominant's white
    LEDs, two other patents are infringed by Dominant's power LEDs and bi-color LEDs, and
28  another patent is infringed by Dominant's power LEDs.  *See* Sanders Decl., Ex. 4.

3

1   complaint, Dominant raised a patent misuse-defense based on the Opinion Letter and cover e-

2   mail message, which it later withdrew.  Also in the ITC proceeding, Dominant moved for

3   summary judgment of non-infringement, but its motion was denied.  *See* Sanders Decl., Ex. 10.

4        In August 2004, Dominant initiated the instant action against OSRAM, alleging unfair

5   competition under the Lanham Act, the California Business and Professions Code, and California

6   common law; intentional interference with contractual relations; interference with prospective

7   economic advantage; and trade libel.  The ITC trial commenced in December 2004; Dominant

8   conceded both that its super-small LEDs infringed one of OSRAM's patents[4] and that its white

9   LEDs infringed five OSRAM patents at the time the ITC investigation began.[5]  *See* Sanders

10  Decl., Ex. 11.  A final determination by the ITC is pending.[6]

11                          **II. LEGAL STANDARD**

12       A motion for summary judgment should be granted if there is no genuine issue of

13  material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

14  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those

15  that might affect the outcome of the case under the governing law.  *Anderson*, 477 U.S. at 248.

16  There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable

17  jury to return a verdict for the nonmoving party.  *Id*.  The moving party bears the initial burden of

18  informing the Court of the basis for the motion and identifying portions of the pleadings,

19  depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of

20  a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the

21  party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it

22  must either produce evidence negating an essential element of the nonmoving party's claim or

23
24       [4] This concession was related to the tenth patent, which was added to the amended ITC
    complaint.

25
26       [5] Dominant claimed at the ITC trial that its white LEDs since had been redesigned to
    avoid infringement.

27
28       [6] The administrative law judge has made an initial determination, which is subject to
    review by the ITC.  According to the parties, the ITC will decide whether to review the initial
    determination by June 24, 2005, and will render a final determination by August 10, 2005.

                                        4

1   show that the nonmoving party does not have enough evidence of an essential element to carry its

2   ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d

3   1099, 1102 (9th Cir. 2000).

4           If the moving party meets its initial burden, the burden shifts to the nonmoving party to

5   present specific facts showing that there is a genuine issue of material fact for trial.  Fed. R. Civ.

6   P. 56(e); *Celotex Corp.*, 477 U.S. at 324.  The nonmoving party may not rely on the mere

7   allegations or denials in its pleading in order to preclude summary judgment. Fed. R. Civ. P.

8   56(e); *Anderson*, 477 U.S. at 248.  The evidence and all reasonable inferences therefrom must be

9   viewed in the light most favorable to the nonmoving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

10  *Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  Summary judgment thus is not

11  appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve

12  the material issue in its favor.  *Anderson*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132,

13  1134-36 (9th Cir. 1991).

14                              **III. DISCUSSION**

15          OSRAM moves for summary judgment of no liability as to Dominant's claims for unfair

16  competition, which are based on allegations that OSRAM made numerous false and misleading

17  statements regarding Dominant's infringement of OSRAM's patents.  When a claim arises out of

18  the assertion of patent rights, "federal patent law bars the imposition of liability [under federal or

19  state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent

20  holder acted in bad faith."  *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir.

21  1999); *see also Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374

22  (Fed. Cir. 2004) ("[F]ederal patent law preempts state-law tort liability for a patentholder's good

23  faith conduct in communications asserting infringement of its patent and warning about potential

24  litigation.").  To avoid preemption, the alleged infringer must make a threshold showing that the

25  patentee acted in bad faith in asserting its patent rights, regardless of the individual elements

26  otherwise required to establish a given claim.  *See Globetrotter*, 362 F.3d at 1374-75.

27          The Court applies a two-step analysis to determine whether a patentee has acted in bad

28  faith.  First, the alleged infringer must show that the patentee's communications alleging

                                        5

1  infringement were "objectively baseless" such that "'no reasonable litigant could realistically

2  expect success on the merits.'"  *Globetrotter*, 362 F.3d at 1376 (quoting *Prof'l Real Estate*

3  *Investors, Inc. v. Columbia Pictures Indus. Inc.*, 508 U.S. 49, 60 (1993)).  After the alleged

4  infringer makes a showing of objective baselessness, it then must establish subjective bad faith

5  on the part of the patentee.  *Id.* at 1376 n.8.  To survive summary judgment and to overcome the

6  initial presumption of good faith, Dominant "must present affirmative evidence sufficient for a

7  reasonable jury to conclude that [OSRAM] acted in bad faith, in light of the burden of clear and

8  convincing evidence that will adhere at trial."  *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360,

9  1371 (Fed. Cir. 2002).

10       Dominant's arguments that OSRAM acted in bad faith primarily concern the reliability of

11  the findings presented in the Opinion Letter and the accompanying e-mail message from

12  OSRAM.  First, Dominant argues that OSRAM refused to provide evidence substantiating the

13  Opinion Letter's infringement analysis during the discovery stage of the ITC litigation, thus

14  creating a disputed issue of material fact as to whether the Opinion Letter actually was reliable.

15  Next, Dominant contends that specific allegations in the Opinion Letter reveal their own

16  unreliability or could not have been supported by the information that was available to

17  OSRAM's patent counsel at the time of the analysis.  Finally, Dominant argues that the Opinion

18  Letter and e-mail message create a false impression that all of Dominant's products infringe

19  OSRAM's patents.  The latter two arguments appear to go to the issue of whether OSRAM's

20  *patent counsel* could have had or did have a reasonable belief in the conclusions he drew.

21  However, the proper inquiry is whether *OSRAM itself* had a reasonable basis for communicating

22  its infringement allegations in reliance on the opinion of its patent counsel.[7]  On this point, *Golan*

23  *v. Pingel Enterprise, Inc.*, is instructive.

24       [7] Dominant argues that there is a genuine issue of material fact as to whether OSRAM
25  actually relied on the Opinion Letter in making its infringement allegations.  However, Dominant
    has offered no evidence suggesting that OSRAM did not rely on the letter.  Indeed, it is difficult
26  to imagine what evidence Dominant could offer for this proposition in light of the fact that
27  OSRAM attached the Opinion Letter to its e-mail message to substantiate its allegations of
    potential infringement.

28

6

1        In *Golan*, the patentee sought to enforce an expired patent, relying on an attorney's

2   erroneous calculation of the patent's expiration date. *See Golan*, 310 F.3d at 1372.  Although the

3   patentee relied on irrefutably false information, the court found that the patentee was not acting

4   in bad faith, because the alleged infringer offered no evidence suggesting that the patentee's

5   reliance on the false information was unreasonable or that the patentee had any reason to believe

6   that the information was false. *See id.* at 1373.  The court held that the very fact of reliance upon

7   an attorney's opinion was one factor that suggested that the patentee had acted good faith. *See id.*

8   Rejecting the alleged infringer's argument that the relied-upon opinion had to be proven credible,

9   the court observed that such a requirement improperly would shift the burden to the patentee to

10  prove that it acted in good faith.[8] *See id.*

11       Having reviewed the undisputed evidence, the Court concludes that OSRAM's

12  allegations of patent infringement in its e-mail message and press releases, based on its patent

13  counsel's conclusion that Dominant's products potentially infringed, were not objectively

14  baseless and thus were not made in bad faith. *See Globetrotter*, 362 F.3d at 1375.  It was

15  objectively reasonable for OSRAM to have relied on the legal opinion of its patent counsel where

16  there is no evidence that counsel's analysis was unreasonable on its face or contained clearly

17  unsupportable conclusions.  OSRAM cannot be said to have acted in bad faith in communicating

18  its infringement allegations where those allegations were based on the results of what appears to

19  have been a good faith investigation by OSRAM's patent counsel of infringement by various

20  Dominant products.  While Dominant argues that OSRAM was in possession of another report

21  concluding that "[i]t remains to be examined whether there are property right infringements" at

22  the time OSRAM made its infringement allegations, Wright Opp'n Decl., Ex. M, and that

23  OSRAM's knowledge of this report establishes the objective baselessness of its infringement

24

25      [8] Dominant argues that, in finding no bad faith on the part of the patentee, the *Golan* court "relied upon the fact that the patentee . . . expended 'considerable effort' pointing out that the

26  opinion of counsel was credible."  Opp'n at 15.  However, Dominant misstates the reasoning of the *Golan* court.  The court actually stated that the *alleged infringer*, not the patentee, had

27  expended considerable effort arguing that the attorney's opinion must be credible but that such effort was misdirected because the correctness of the opinion is not the proper focus of the

28  inquiry. *See Golan*, 310 F.3d at 1373.

1   allegations—or at least raises a genuine issue of material fact as to OSRAM's bad faith—the

2   Court concludes that the mere existence of this report would be insufficient to support a jury

3   verdict in favor of Dominant.  The report is dated May 21, 2002, more than a year before

4   OSRAM's patent counsel conducted its own investigation and drew a tentative conclusion of

5   infringement.  The Court also rejects Dominant's arguments that the mere fact that OSRAM

6   dropped some of the claims in its amended ITC complaint or made infringement allegations

7   without bringing a lawsuit in court—as opposed to bringing claims of infringement before the

8   ITC—raises a genuine issue as to whether OSRAM acted in bad faith; to credit these arguments

9   essentially would be to subject patentees to potential liability any time they amend their

10  pleadings or choose a forum for asserting their patent rights other than a court, regardless of the

11  presence of evidence of good faith or the lack of "other" evidence of bad faith.  Accordingly,

12  OSRAM's motion for summary judgment of no liability as to Dominant's claims for unfair

13  competition will be GRANTED.[9]

14          As to Dominant's remaining state law claims for intentional interference with contractual

15  relations, interference with prospective economic advantage, and trade libel, as well as

16  Dominant's assertion that its state law unfair competition claims should survive the instant

17  motion,[10] the Court concludes that these claims also are preempted by federal patent law, as they,

18  too, arise out of OSRAM's good-faith assertion of its patent rights.  By their very nature,

19  Dominant's claims for intentional interference with contractual relations and interference with

20  prospective economic advantage must be based on OSRAM's statements to the public or to

21  particular third parties, and the only such statements alleged specifically in the complaint are

22  those relating to patent infringement.  Similarly, the harm alleged in the common law unfair

23

24          [9] This ruling applies to Dominant's claims for unfair competition under the Lanham Act
        and California statutory and common law.

25          [10] Dominant argues, without elaborating, that "the elements of [its] state law and common

26  law [unfair competition] claims are different from the elements of a Lanham Act claim" and that

27  "many of the state law claims are broader in their prohibition of unfair business practices and
        sweep within their scope behavior that may otherwise not be actionable under the Lanham Act."
        Opp'n at 19-20.

28

1   competition claim is "lost sales, loss of goodwill and harm to Dominant's reputation," Compl. ¶

2   53, which could have resulted only from OSRAM's statements regarding Dominant's potential

3   patent infringement.  Moreover, the claim for trade libel is premised on OSRAM's "false

4   statements," and all of the "false and misleading statements" set forth in a separate section of the

5   complaint entitled "Osram's Recent False and Misleading Statements" relate to OSRAM's

6   infringement allegations against Dominant.  *See* Compl. at 5-7, 10.  All of the evidence cited by

7   Dominant purportedly to show a non-patent basis for the state law claims in fact relates either

8   directly or indirectly to the Opinion Letter and OSRAM's infringement allegations against

9   Dominant,[11] and Dominant may not rely on mere allegations in its complaint that OSRAM has

10   engaged in harassing behavior unrelated to the issue of patent infringement (and prior to the

11   distribution of the Opinion Letter), *see* Compl. ¶¶ 16, 17, in order to preclude summary

12   judgment.  Accordingly, OSRAM's motion for summary judgment of no liability also will be

13   GRANTED as to Dominant's state law claims for intentional interference with contractual

14   relations, interference with prospective economic advantage, and trade libel.

15                                          **IV. ORDER**

16          Good cause therefore appearing, IT IS HEREBY ORDERED that OSRAM's motion for

17   summary judgment of no liability is GRANTED as to all claims.[12]

18

19   DATED: June 21, 2005

20

21                                          /s/ electronic signature authorized
                                            JEREMY FOGEL
22                                          United States District Judge

23          [11] It is not the Court's task to "examine the entire file for evidence establishing a genuine

24   issue of fact, where the evidence is not set forth in the opposing papers with adequate references

25   so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031
     (9th Cir. 2001).

26          [12] OSRAM also moved to stay discovery pending the Court's ruling on its motion for

27   summary judgment, arguing that continued discovery would be wasteful if the case ultimately
     was disposed of on summary judgment.  Dominant opposed the motion.  The motion to stay
28   discovery is rendered moot by this Order.

Case No. C 04-3319 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFEX2)

1    This Order has been served upon the following persons:

2

3    Evelyn G. Heilbrunn          heilbrunn@fr.com, herring@fr.com

     David James Miclean          miclean@fr.com, arceo@fr.com
4
     Shawn D. Parrish             sdp@mjllp.com
5
     Charles H. Sanders           sanders@fr.com
6
     Joanna V. Stromberg          jstromberg@mjllp.com, rwright@wrightgunter.com
7
     Rocky N. Unruh               Unruh@mjllp.com
8

9    Celine Jimenez Crowson
     Hogan & Hartson LLP
10   555 Thirteenth Street
     Washington, DC 20004
11
     Raymond Kurz
12   Hogan & Hartson LLP
     555 Thirteenth Street, NW
13   Washington, DC 20004

14   Anna Kurian Shaw
     Hogan & Hartson LLP
15   555 Thirteenth Street, N.W.
     Washington, DC 20004
16
     Jonathan M. Sobel
17   Hogan & Hartson LLP
     555 Thirteenth Street, NW
18   Washington, DC 20004

19   Teresa Summers
     Hogan & Hartson LLP
20   555 Thirteenth Street NW
     Washington, DC 20004
21
     Robert L. Wright
22   Wright Berry & Odom LLP
     612 Eighth Avenue
23   Fort Worth, TX 76104

24

25

26

27

28

Case No. C 04-3319 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFEX2)